# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ALFONSO RODRIGUEZ, M.D., | CIVIL ACTION NO. 3:12-cv-1458 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| MICHAEL L. KRANCER, in his official capacity as Secretary of the Pennsylvania Department of Environmental Protection, ROBERT F. POWELSON, in his official capacity as Chairman of the Public Utility Commission, and LINDA L. KELLY, in her official capacity as Attorney General of the Commonwealth of Pennsylvania, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are Motions to Dismiss filed by Defendant Linda L. Kelly[1] (Doc. 10) and Defendants Michael L. Krancer and Robert F. POWLESON (Doc. 21). Because Plaintiff Dr. Alfonso Rodriguez, M.D. ("Plaintiff") lacks standing to bring this case, both Motions to Dismiss will be granted under Federal Rule of Civil Procedure 12(b)(1).

---

[1] Attorney General Kathleen G. Kane was sworn in as the new Attorney General for the Commonwealth on January 13, 2013, replacing former Attorney General Linda L. Kelly. Pursuant to Federal Rule of Civil Procedure 25, which states that "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party," Attorney General Kane in her official capacity automatically substitutes Linda L. Kelly in this action.

## BACKGROUND

The facts as alleged by Plaintiff in his Complaint (Doc. 1) are as follows:

Plaintiff is a nephrologist, a physician specializing in the treatment of renal diseases, hypertension, and advanced diabetes, who practices and resides in Dallas, PA. (Doc. 1, ¶¶ 15, 33.) Plaintiff directs several hemodialysis units, which treat and purify blood by removing toxins. (Doc. 1, ¶ 36.) Plaintiff has treated patients "directly exposed to high-volume hydraulic fracturing fluid as the result of well blowouts, including a patient exposed to hydraulic fracturing fluid who was admitted to the hospital with a complicated diagnosis of low platelets, anemia, rash and acute renal failure that required extensive hemodialysis and exposure to chemotherapeutic agents." (Doc. 1, ¶ 39.)

Proper diagnosis and treatment of patients whose illness or medical condition results from contact with environmental contaminants requires information regarding any toxic chemicals to which they have been exposed. (Doc. 1, ¶¶ 34-35.) This includes knowledge of hydraulic fracturing fluids and waste products derived from natural gas drilling and high-volume hydraulic fracturing. (Doc. 1, ¶ 38.)

On February 14, 2012, the General Assembly of the Commonwealth of Pennsylvania enacted Act 13, which amended the Oil and Gas Act. Plaintiff refers to this legislation as the "Medical Gag Act" ("the Act"), which states in pertinent part that:

> If a health professional determines that a medical emergency exists and the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information are necessary for emergency treatment, the vendor, service provider or operator shall immediately disclose the information to the health professional upon a verbal acknowledgment by the health professional that the information may not be used for purposes other

2

> than the health needs asserted and that the health professional shall maintain the information as confidential. The vendor, service provider or operator may request, and the health professional shall provide upon request, a written statement of need and a confidentiality agreement from the health professional as soon as circumstances permit, in conformance with regulations promulgated under this chapter.

(Doc. 1, ¶ 40) (citing 58 Pa. C.S. § 3222.1(b)(11) (2012)).

Gas drilling through high-volume hydraulic fracturing is common in Pennsylvania. (Doc. 1, ¶ 19.) The exact "recipe" of the "'secret' brew of toxic fluids" that comprise fracturing fluid used to break apart underground shale rock is often unique to the specific fracturing site. (Doc. 1, ¶¶ 20-22.) However, the "general 'recipe'" of hydraulic fracturing liquid is common knowledge within the gas industry, and the fluid generally contains a mixture of chemicals such as benzene, toluene, ethylbenzene, xylene, microbiocides, glycols, glycol ethers, and petroleum products. (Doc. 1, ¶¶ 24-25.) Direct contact with fracturing fluid and accompanying waste products can cause a wide range of negative medical conditions that may require emergency medical attention. (Doc. 1, ¶ 7.)

As a physician, Plaintiff is required to adhere to the "Principles of Medical Ethics" promulgated by the American Medical Association ("Ethics Code"). (Doc. 1, ¶¶ 43-44.) If Plaintiff violates the Ethics Code he may be subject to professional discipline. *Id.* Under the Ethics Code, Plaintiff must "be dedicated to providing competent medical care, with compassion and respect for human dignity and rights;" "respect the law and also recognize a responsibility to seek changes in those requirements which are contrary to the best interests of the patient;" and "continue to study, apply, and advance scientific knowledge, maintain a commitment to medical education, make relevant information available to

3

patients, colleagues, and the public, obtain consultation, and use the talents of other health professionals when indicated." (Doc. 1, ¶¶ 45-47.) Furthermore, Ethics Opinion 8.08 of the American Medical Association states that:

> The patient's right of self-decision can be effectively exercised only if the patient possesses enough information to enable an informed choice. The patient should make his or her own determinations about treatment. The physician has an ethical obligation to help the patient make choices from among the therapeutic alternatives consistent with good medical practice.

(Doc. 1, ¶ 49.) Thus, Plaintiff asserts that he is under an ethical obligation to collect relevant information available to properly diagnose a patient's medical condition and to communicate the information necessary for proper diagnosis and care of his patients. (Doc. 1, ¶¶ 4, 5.) Plaintiff further asserts that he is under a professional and ethical obligation to communicate critical data and information obtained in the course of treating patients to other medical doctors, researchers, and the general public to advance scientific knowledge. (Doc. 1, ¶ 6.) Plaintiff alleges that violation of the Ethics Code would result in professional discipline, up to and including revocation of his license to practice medicine. (Doc. 1, ¶ 15.)

Plaintiff's Complaint consists of two counts. Count I asserts First and Fourteenth Amendment claims against Defendants under 42 U.S.C. § 1983 because the Act abridges Plaintiff's freedom to communicate information that may be disclosed to him through the operation of the Act, and by failing to give Plaintiff adequate notice of communications that might be prohibited by confidentiality agreements mandated by the Act. (Doc. 1, ¶ 72.) Count II asserts that the Act impairs Plaintiff's First Amendment rights under the "Unconstitutional Conditions Doctrine" by conditioning the exercise of the Commonwealth's

4

police powers on Plaintiff's waiver of fundamental constitutional rights secured under the First and Fourteenth Amendments. (Doc. 1, ¶¶ 74-75.)

Based on the above allegations, on July 27, 2012, Plaintiff filed his Complaint against Defendants Linda L. Kelley, Michael L Krancer, and Robert F. Powleson (Doc. 1). Plaintiff requests that the Court declare the Act a violation of Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and enjoin Defendants from enforcing it. (Doc. 1, ¶¶ (A)-(B).) Plaintiff also requests that he be awarded nominal damages, and reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988. (Doc. 1, ¶¶ (C)-(D).) On October 16, 2012, Defendant Kelley filed a Motion to Dismiss the Complaint (Doc. 10) for lack of standing and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). She filed her Brief in Support of Motion to Dismiss the Complaint (Doc. 14) on October 31, 2012. On December 3, 2012, Defendants Krancer and Powleson filed their Motion to Dismiss (Doc. 21) on the same grounds, followed by their Brief in Support of Motion to Dismiss (Doc. 22) on December 17, 2012. On January 15, 2013, Plaintiff filed a Consolidated Brief in Partial Opposition to Defendants' Pending Motions to Dismiss (Doc. 27). On January 22, 2013, Defendant Powleson filed a Stipulation of Dismissal (Doc. 30), stating that the parties stipulated that "all claims against Defendant Robert F. POWLESON are dismissed with prejudice," which the Court approved on January 23, 2013 (Doc. 32). Also on January 23, 2013, *Amici Curiae* Physicians, Scientists, and Engineers for Healthy Energy and Physicians for Social Responsibility filed a Brief in Support of Plaintiff (Doc. 34). On January 29, 2013, and

5

February 1, 2013, Defendants Krancer and Kathleen G. Kane each filed a Reply Brief regarding their respective Motions to Dismiss. (Doc. 35 and 36.) Since the motions have been fully briefed, they are ripe for disposition.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of standing "is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000), *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970)). "On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (internal quotations omitted)). At the pleading stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice'" to confer standing. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

## ANALYSIS

Article III of the Constitution, "limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'" *Hein v. Freedom From Religious Foundation, Inc.*, 551 U.S. 587, 597-98, 127 S. Ct. 2553, 168 L. Ed. 2d. 424 (2007) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)). "'[O]ne of the controlling elements in the definition of a case or controversy under Article III' is standing." *Id.* at 598 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989) (opinion of KENNEDY, J.)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Even if the Article III standing requirements are satisfied, prudential limitations on standing may prevent parties from bringing an action in federal court. Broadly, the prudential standing requirements serve "'to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a particular claim.'" *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (citing *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179). Prudential

standing requires that:

> (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

*Id.* (quoting *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County*, 271 F.3d 140, 146 (3d Cir. 2001)).

However, "[i]n the First Amendment context, . . . courts relax the prudential requirement that a litigant raise his own rights and interests." *Serv. Employees Int'l Union, Local 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 423 (3d Cir. 2006). More specifically, "[u]nder the First Amendment overbreadth doctrine, even though a party whose conduct could constitutionally be proscribed by statute may not normally be heard to complain that the statute under which he is prosecuted is so broad that it proscribes constitutionally protected conduct, courts will allow the party to raise the claims of others when protected speech is at issue." *Id.* (citation omitted). *See also Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) ("Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."). Importantly, however, "such litigants, of course, must still meet the constitutional requirement of injury-in-fact because their own constitutionally unprotected interests will be

8

adversely affected by application of the statute." *Service Employees Int'l Union*, 446 F. 3d at 423. Thus, as the Third Circuit Court of Appeals clarifies, to bring a facial overbreadth challenge to a statute under the First Amendment, a plaintiff must still meet the requirements of Article III standing, despite the fact that he is granted latitude in satisfying the prudential standing requirement that a litigant assert his own rights and interests.

**A.      Article III Standing**

To satisfy the injury in fact requirement of Article III standing, a plaintiff's injury "must be concrete in both a qualitative and temporal sense." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). Thus, "the complaint must allege an injury . . . that is 'distinct and palpable,' as distinguished from merely 'abstract' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Accordingly, a plaintiff "lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Id.* (quoting *Lujan*, 504 U.S. at 564, 112 S. Ct. 2130).

In *Reilly v. Ceridian Corp.*, the Third Circuit Court of Appeals affirmed a District Court's refusal to confer standing in case where appellants had "yet to suffer any harm, and their alleged increased risk of future injury [was] nothing more than speculation." *Id.* at 43. In that case, several law firm employees sought to bring a class action against Ceridian, a payroll processing firm, for alleged damage, injury, and loss resulting from a security breach. *Id.* at 40. Because of the breach, an unknown hacker may have gained access to

9

personal and financial employee information. *Id.* at 40. The District Court dismissed the case for lack of standing, and failure to state a claim in the alternative. On appeal, the Third Circuit affirmed on the ground that appellants lacked standing. *Id.* The Court of Appeals concluded that "Appellants' allegations of hypothetical future injury are insufficient to establish standing." *Id*. at 42. More specifically, the court explained that:

> Appellants' contentions rely on speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of Appellants by making unauthorized transactions in Appellants' names. Unless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm.

*Id.* Therefore, the Third Circuit refused to confer standing where the "'prospective damages, described by the [plaintiff-appellants] as certain, are, in reality, conjectural.'" Illustrating the conjectural nature of the alleged injury, the court explained that it could not "'describe how Appellants will be injured in this case without beginning our explanation with the word 'if.''" *Id.* at 43 (quoting *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297-98 (3d Cir. 2003)).

Like the plaintiff-appellants in *Reilly*, the Court finds that Plaintiff's alleged injury in this case is too conjectural to satisfy the injury in fact requirement of Article III standing. In an attempt to describe his injury in this case, Plaintiff broadly asserts that the Act infringes on his First and Fourteenth Amendment rights by "abridging [his] freedom . . . to communicate with [his] patients, colleagues, medical researchers and the public regarding the identify and amount of chemicals" obtained under the Act. (Doc. 1, ¶ 72(a).) Plaintiff

10

also claims that the Act "conditions the exercise of the Commonwealth's police power on [his] forced waiver of fundamental constitutional rights secured under the First and Fourteenth Amendments" in order to obtain information. (Doc. 1, ¶ 74.) These alleged injuries are both hypothetical. Although Plaintiff alleges that he requires the kind of information contemplated under the Act for the treatment of his patients, he does not allege that he has been in a situation where he needed or attempted to obtain such information, despite the fact that he alleges that he has treated patients injured by hydraulic fracturing fluid in the past. Similarly, Plaintiff does not allege that he has been in a position where he was required to agree to any sort of confidentiality agreement under the Act. Therefore, to the extent that Plaintiff's alleged injury-in-fact is an inability to exercise his First Amendment rights, he has not yet indicated that he has been prevented from engaging in any sort of communication as a result of the Act. Similarly, Plaintiff has failed to indicate that he has been forced to waive any of his fundamental constitutional rights. Thus, Plaintiff fails to satisfy the injury-in-fact requirement because his allegations of future injury are merely conjectural, as explained in *Reilly*.

Plaintiff also argues that he has standing to challenge the Act because he can show a "well founded or reasonable fear of prosecution" under the Act. (Doc. 27, 19). As Plaintiff explains, the injury-in-fact requirement of standing can be satisfied when a plaintiff asserts that a law "is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S. Ct. 636, 98 L. Ed. 2d 782

(1988) (citations omitted). In support of this argument, Plaintiff draws on three additional cases in which plaintiffs had Article III standing to challenge statutes that placed them in a difficult position of taking costly compliance measures or risking some form of civil enforcement. *See, e.g.*, *Allen, Allen, Allen & Allen v. Williams*, 254 F. Supp. 2d 614, 624 (E.D. Va. 2003) (plaintiff law firm has sanding to challenge the constitutionality of Rule 7.1(a)(3) of the Virginia Rules of Professional Conduct where there is a threat of formal disciplinary action), *Bland v. Fessler*, 88 F.3d 729, 736-38 (9th Cir. 1996) (plaintiffs telephone advertiser and telecomputer operators association have standing to challenge civil statute regulating telephone automatic dialing and announcing devices that is enforceable with civil fines and private enforcement actions), *J.L. Spoons, Inc. v. Brown*, 40 F. Supp. 2d 902, 905 (N.D. Oh., 1999) (adult entertainment establishment operators have standing to challenge the constitutionality of Ohio Liquor Control Commission Rule 54 where plaintiffs could lose liquor permits). Plaintiff's situation differs from the plaintiffs in the above cases because any potential penalties or enforcement actions that Plaintiff may be subject to as a consequence of the Act would be contingent on multiple factors not adduced in his Complaint. While the other plaintiffs risked civil enforcement if they did not alter their current behavior, Plaintiff does not find himself in a similar precarious position. Plaintiff would have to request information under the Act to be similarly situated to the other Plaintiffs. He has not alleged that he has done so. Instead, if he maintains the status quo, he is not required to implement substantial and costly compliance measures, and he is not at risk of incurring civil penalties.

Although Plaintiff does allege that he has suffered an economic injury, his expenditures in this case were merely a prophylactic measure to ease his fears of potential future harm. More specifically, Plaintiff attempts to satisfy the injury-in-fact requirement by claiming that he has been forced to pay legal fees to draft and copy a "notice/warning" to his patients that he may be prevented from communicating vital information to them over the course of treatment. (Doc. 27, 17.) Since Plaintiff has not yet obtained any information under the Act, he should be able to maintain an appropriate relationship with his patients under the Ethics Code. Furthermore, he has not sufficiently alleged that he will need to acquire such information because he asserts that he has already treated patients exposed to fracturing fluid without it. Therefore, the notice he drafted to his patients was not a requirement of Plaintiff's adherence to Act; it was a voluntary exercise of caution. As Defendants assert, the Act did not require Plaintiff to "do anything by way of notice to the public," and thus, "his actions were entirely voluntary." (Doc. 35, 3.)

The Third Circuit Court of Appeals concluded in *Reilly* that Appellants could not overcome the conjectural nature of their purported injury-in-fact with "alleged time and money expenditures to monitor their financial information." *Id.* at 46 (citing *Randolph v. INC Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007)). The court explained that "costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for Appellants' claims." *Id.* The fact that a plaintiff "has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to

13

demonstrate a 'concrete and particularized' or 'actual or imminent' injury." *Id.* (Internal citations omitted). Therefore, "prophylactically" spending money "in anticipation of future harm" is insufficient to confer standing. *Id.* at 45. Like the plaintiff-appellants in *Reilly*, Plaintiff's claim of economic injury based on the money he spent drafting and copying a notice to his patients in anticipation of future harm is insufficient to confer Article III standing.

## B. Prudential Standing

As noted above, prudential standing poses additional requirements on parties seeking to bring an action in federal court. Regardless of whether Plaintiff satisfies the prudential standing requirements, because he has failed to satisfy the injury-in-fact requirement of Article III standing, the Court will grant Defendants' Motions to Dismiss. Therefore, to the extent that Plaintiff attempts to assert a facial overbreadth challenge to the statute, he is precluded from doing so because he fails to satisfy the injury-in-fact requirement of Article III standing.[2] *See Serv. Employees Int'l Union*, 446 F.3d at 424 ("Overbreadth doctrine effectively allows a party to challenge separate and hypothetical applications of a regulation only when an otherwise valid application of that same regulation causes the party injury-in-fact.").

However, even if Plaintiff does have Article III standing in this case, it is unclear that he has satisfied the prudential standing requirement that a litigant assert his own rights and

---

[2] Although Plaintiff alleges that the Act is unconstitutionally overbroad and vague, the thrust of his challenge to the Act seems to be the Act's potential application to him based on his alleged engagement in protected activity, as opposed to injury to others not before the Court.

14

interests, even in the context of alleged First Amendment violations where this requirement is "relaxed." As with his failed attempt to establish injury-in-fact to himself in the context of Article III standing, Plaintiff can only allege that the Act might cause hypothetical harm to others not before the court in attempting to satisfy the prudential standing requirements. Because any restrictions on speech resulting from the Act would not manifest themselves until multiple contingencies not alleged in the complaint become a reality, the Court cannot make the requisite "judicial prediction or assumption that the statutes's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956-57, 104 S. Ct. 2839, 2847 (1984) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). Therefore, to the extent that this issue has been raised in a facial challenge to the Act, Plaintiff appears to lack prudential standing to bring this action.

## CONCLUSION

For the above stated reasons, Defendants' Motions to Dismiss will be granted for lack of subject matter jurisdiction because Plaintiff lacks standing.

An appropriate order follows.

October 23, 2013 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge