IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DR. ALFONSO RODRIGUEZ, M.D.,

    Plaintiff,

        v.

E. CHRISTOPHER ABRUZZO, in his official capacity as Secretary of the Pennsylvania Department of Environmental Protection, ROBERT F. POWELSON, in his official capacity as Chairman of the Public Utility Commission, and KATHLEEN G. KANE, in her official capacity as Attorney General of the Commonwealth of Pennsylvania,[1]

    Defendants.

CIVIL ACTION NO. 3:12-cv-1458

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court are Motions to Dismiss Plaintiff's Amended Complaint filed by Defendant Kathleen G. Kane (Doc. 47) and Defendant E. Christopher Abruzzo (Doc. 46). In this case, Dr. Rodriguez challenges the constitutionality 58 Pa. C.S. § 3222.1(b)(10) and (11), two provisions of Act 13 of 2012 ("the Act"). Plaintiff, Dr. Alfonso Rodriguez, M.D. ("Plaintiff") refers to these provisions as the "Medical Gag Rules" and alleges that they violate his First and Fourteenth Amendment rights. Because Plaintiff lacks standing to bring this case, both motions to dismiss will be granted.

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Attorney General Kathleen G. Kane in her official capacity automatically substitutes for Linda L. Kelly, and Secretary of the Pennsylvania Department of Environmental Protection E. Christopher Abruzzo in his official capacity automatically substitutes for Michael L. Krancer.

**BACKGROUND**

The facts as alleged in the Amended Complaint ("*Am. Comp.*," Doc. 43) are as follows:

Plaintiff is a nephrologist, a physician specializing in the treatment of renal diseases, hypertension, and advanced diabetes, who practices and resides in Dallas, PA. (*Am. Compl.*, ¶¶ 15, 33.) Plaintiff directs several hemodialysis units, which treat and purify blood by removing toxins. *Id.* at ¶ 36. Plaintiff is unable to obtain critical information about the quality of local water needed on a daily basis for his practice from gas drillers as a direct and proximate cause of the "Medial Gag Rules." *Id.* at ¶ 38. Plaintiff has treated patients "directly exposed to high-volume hydraulic fracturing fluid as the result of well blowouts, including a patient exposed to hydraulic fracturing fluid who was admitted to the hospital with a complicated diagnosis of low platelets, anemia, rash and acute renal failure that required extensive hemodialysis and exposure to chemotherapeutic agents." *Id.* at ¶ 40.

Proper diagnosis and treatment of patients whose illness or medical condition results from contact with environmental contaminants requires information regarding what toxic chemicals they have been exposed to. (Doc. 1, ¶¶ 34-35.) This includes knowledge of hydraulic fracturing fluids and waste products derived from natural gas drilling and high-volume hydraulic fracturing. *Id.* at ¶ 39.

On February 14, 2012, the General Assembly of the Commonwealth of Pennsylvania enacted Act 13, which amended the Oil and Gas Act. Section 3222.1(b)(11) of the Act, which Dr. Rodriguez refers to as the "emergency Medical Gag Rule," provides that:

2

> If a health professional determines that a medical emergency exists and the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information are necessary for emergency treatment, the vendor, service provider or operator shall immediately disclose the information to the health professional upon a verbal acknowledgment by the health professional that the information may not be used for purposes other than the health needs asserted and that the health professional shall maintain the information as confidential. The vendor, service provider or operator may request, and the health professional shall provide upon request, a written statement of need and a confidentiality agreement from the health professional as soon as circumstances permit, in conformance with regulations promulgated under this chapter.

(*Am. Compl.*, ¶ 41) (citing 58 Pa. C.S. § 3222.1(b)(11) (2012)).  Section 3222.1(b)(10) of the Act, which Dr. Rodriguez refers to as the "non-emergency Medical Gag Rule" provides that:

> A vendor, service company or operator shall identify the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information to any health professional who requests the information in writing if the health professional executes a confidentiality agreement and provides a written statement of need for the information indicating all of the following:
> (I) The information is needed for the purpose of diagnosis or treatment of an individual.
> (ii) The individual being diagnosed or treated may have been exposed to a hazardous chemical.
> (iii) Knowledge of information will assist in the diagnosis or treatment of an individual.

(*Am. Compl.*, ¶ 43) (citing 58 Pa. C.S. § 3222.1(b)(10) (2012)).

Gas drilling through high-volume hydraulic fracturing is common in Pennsylvania. (*Am. Compl.*, ¶ 19.)  The exact "recipe" of the "'secret' brew of toxic fluids" that comprise fracturing fluid used to break apart underground shale rock is often unique to the specific fracturing site.  *Id.* at ¶¶ 20-22.  However, the "general 'recipe'" of hydraulic fracturing liquid

3

is common knowledge within the gas industry, and the fluid generally contains a mixture of chemicals such as benzene, toluene, ethylbenzene, xylene, microbiocides, glycols, glycol ethers, and petroleum products. *Id.* at ¶¶ 24-25.  Direct contact with fracturing fluid and accompanying waste products can cause a wide range of negative medical conditions that may require emergency medical attention. *Id.* at ¶ 7.

As a physician, Plaintiff is required to adhere to the "Principles of Medical Ethics" promulgated by the American Medical Association ("Ethics Code"). *Id.* at ¶¶ 45-46.  If Plaintiff violates the Ethics Code he may be subject to professional discipline.  *Id.*  Under the Ethics Code, Plaintiff must "be dedicated to providing competent medical care, with compassion and respect for human dignity and rights;" "respect the law and also recognize a responsibility to seek changes in those requirements which are contrary to the best interests of the patient;" and "continue to study, apply, and advance scientific knowledge, maintain a commitment to medical education, make relevant information available to patients, colleagues, and the public, obtain consultation, and use the talents of other health professionals when indicated." *Id.* at ¶¶ 47-49. Furthermore, Ethics Opinion 8.08 of the American Medical Association states that:

> The patient's right of self-decision can be effectively exercised only if the patient possesses enough information to enable an informed choice.  The patient should make his or her own determinations about treatment.  The physician has an ethical obligation to help the patient make choices from among the therapeutic alternatives consistent with good medical practice.

*Id.* at ¶ 51.  Thus, Plaintiff asserts that he is under an ethical obligation to collect relevant information available to properly diagnose a patient's medical condition and to

4

communicate the information necessary for proper diagnosis and care of his patients. *Id.* at ¶¶ 4, 5. Plaintiff further asserts that he is under a professional and ethical obligation to communicate critical data and information obtained in the course of treating patients to other medical doctors, researchers, and the general public to advance scientific knowledge. *Id.* at ¶ 6. Plaintiff alleges that violation of the Ethics Code would result in professional discipline, up to and including revocation of his license to practice medicine. *Id.* at ¶ 15.

Plaintiff asserts that he "will testify that the Medical Gag Rule interferes with the free and open exchange of information expressly required of plaintiff by the ethical obligations imposed by the medical profession." *Id.* at ¶ 53. He also asserts that "[e]xpert testimony at trial will establish that in both emergency and non-emergency situations plaintiff is ethically prohibited from signing any confidentiality agreements imposed by the Medical Gag Rules of Act 13," that "the Medical Gag Rules interfere, on a daily and ongoing basis, with plaintiff's ability to properly diagnose and treat his patients," and that "the inability of plaintiff to secure information as to the purity of local water supplies threatens plaintiff's ability to properly diagnose and treat his patients and imposes upon plaintiff a present and ongoing threat of civil liability for any improper diagnosis and treatment as a direct and proximate result of the Medical Gag Rules of Act 13." *Id.* at ¶¶ 54-56.

In his Amended Complaint, Plaintiff asserts claims for: (I) First and Fourteenth Amendment violations under 42 U.S.C. § 1983, alleging that the emergency Medical Gag Rule is an impermissible content-based restriction of speech that is unconstitutionally vague and overbroad, that it abridges Plaintiff's freedom to communicate information that may be

5

disclosed to him through the operation of the Act, and by failing to give Plaintiff adequate notice of communications that might be prohibited by confidentiality agreements mandated by the Act, *Id.* at ¶ 78; (II) similar First and Fourteenth Amendment violations under 42 U.S.C. § 1983 with respect to the non-emergency Medical Gag Rule, *Id.* at ¶ 83; and (III) First Amendment violations under the "Unconstitutional Conditions Doctrine" asserting that the Medical Gag Rules condition the exercise of the Commonwealth's police powers on Plaintiff's waiver of fundamental constitutional rights secured under the First and Fourteenth Amendments. *Id.* at ¶¶ 83-85.  Plaintiff requests that the Court declare the Act a violation of Plaintiff's rights under the First and Fourteenth Amendments and enjoin Defendants from enforcing it.  *Id.* at ¶¶ (A)-(B).  Plaintiff also requests that he be awarded nominal damages, reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988.  *Id.* at ¶¶ (C)-(D).

**PROCEDURAL HISTORY**

Plaintiff commenced this action on July 27, 2012 (Doc. 1).  Defendants moved to dismiss Plaintiff's Complaint, and the motion was granted on October 23, 2013.  *See Rodriguez v. Krancer*, – F.Supp.2d –, No. 12-cv-1458, 2013 WL 5744866, at *1 (M.D. Pa. Oct. 23, 2013); Docs. 37 and 38.  On January 10, 2014, Plaintiff's Motion to Alter or Amend Judgment (Doc. 39) was denied, but Plaintiff was granted leave to file an Amended Complaint.  (Doc. 42.)  Plaintiff then filed an Amended Complaint (Doc. 43) on January 31, 2014.  On February 14, 2014 Defendant Krancer filed his Motion to Dismiss (Doc. 46), and on February 18, 2014 Defendant Kelly filed her Motion to Dismiss (Doc. 47).  On April 3,

2014, Haliburton Energy Services, Inc.'s Brief of *Amicus Curiae* in Support of the Motions to Dismiss the Amended Complaint was docketed (Doc. 52-4). The motions have been fully briefed, and are thus ripe for disposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of standing "is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000), *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970))*.* "On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (internal quotations omitted)). At the pleading stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice'" to confer standing. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

## ANALYSIS

As the Court previously explained in *Rodriguez v. Krancer*, – F.Supp.2d –, No. 12-cv-

1458, 2013 WL 5744866, at *1 (M.D. Pa. Oct. 23, 2013), Docs. 37 and 38, "[t]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L. Ed. 2d 351 (1992)).

To satisfy the injury in fact requirement of Article III standing, a plaintiff's injury "must be concrete in both a qualitative and temporal sense." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). Thus, "the complaint must allege an injury . . . that is 'distinct and palpable,' as distinguished from merely 'abstract' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Accordingly, a plaintiff "lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Id.* (quoting *Lujan*, 504 U.S. at 564, 112 S. Ct. 2130).

The Court previously held that "Plaintiff's alleged injury in this case is too conjectural to satisfy the injury in fact requirement of Article III standing." *Rodriguez v. Krancer*, No. 3:12-CV-1458, 2013 WL 5744866, at * 5 (M.D. Pa. Oct. 23, 2013). As Defendant Abruzzo points out, despite Plaintiff's promise of more "'facts' he could plead in support of his standing," no such facts have been alleged. (Doc. 48, 6.) Instead, in arguing that he has

8

suffered an injury-in-fact, Plaintiff asserts that he has "foregone expression (receiving and communicating information from the gas drilling industry necessary to diagnose and treat critically ill patients) because the price to gain access to the information implicates a facial violation of rules of medical ethics." (Doc. 58, 21.)  More specifically, in his Amended Complaint, Plaintiff asserts that proper treatment of his patients "requires knowledge of environmental toxins that [his] patients may have been exposed to, including hydraulic fracturing fluids and the waste product derived from natural gas drilling using high-volume hydraulic fracturing." (*Am. Compl.*, ¶ 39.)  Plaintiff further asserts that "[h]emodialysis requires a pure source of water" and that Plaintiff "receives daily alerts from the FDA, the CDC and local water companies on the status of the local water system to properly treat his patients." *Id.* at ¶ 37.  He further asserts that he is "not able to obtain critical information regarding the quality of local water . . . from gas drillers." *Id.* at ¶ 38. Therefore, as a nephrologist, and given his need for a pure source of water, Plaintiff asserts in his Brief in Opposition to the motions to dismiss that "Act 13's offer of information as to the toxins and chemicals that hydraulic fracturing gas drillers are pumping into plaintiff's local geologic substrata is a key piece of information that is needed for the purpose of diagnosing and treating patients that plaintiff currently treats every business day of the year" and that "[a]ccordingly, Plaintiff has standing to challenge the non-emergency medical gag rule of Act 13" (Doc. 58, 23).

     Essentially, Plaintiff argues that he needs to know which toxins a hemodialysis patient may have been exposed to, and which toxins local water may contain, so that he

9

can test the patient for those toxins and monitor their removal from the patient's blood stream, and that he has suffered an injury-in-fact because he lacks that information. As to his claims regarding the quality of local water, the Amended Complaint fails to sufficiently allege any link between information about local water and the Medical Gag Rules. As Defendant Kane notes, "there is nothing to suggest that members of the oil and gas industry are suppliers of public drinking water or that they would be in the position to provide information regarding the quality of such water." (Doc. 49, 12.) Therefore, Plaintiff's argument that he has suffered an injury-in-fact because he has been unable to verify the quality of local drinking water from gas drillers due to the Medical Gag Rules falls short.

Plaintiff also states in his Amended Complaint that the "general 'recipe' of hydraulic fracturing fluid is common knowledge within the gas drilling industry," and that the "exact 'recipe' used at any specific gas drilling site is not a trade secret, but rather, an ad hoc concoction developed by the operators." *Id.* at ¶¶ 24, 23. Therefore, based on his own assertions, to treat his hemodialysis patients and ensure that his water source is pure, Plaintiff should not have to avail himself of the Act, which only covers information "claimed to be a trade secret." *See* 58 Pa. C.S. § 3222.1(b)(10).

Moreover, and in any event, the question of whether Plaintiff's practice requires him to know information contemplated by the Act in treating his patients remains unanswered, and Plaintiff's arguments to that effect remain factually unsubstantiated. Therefore, any potential injury Plaintiff alleges that he experiences based on this lack of information is speculative and conjectural. Again, Plaintiff has failed to allege that he has not been able

to practice medicine adequately without the information or that he has made any specific of attempt to obtain information about hydraulic fracturing fluid for the treatment of his patients. [2, 3] Therefore, Plaintiff lacks standing in this case because he fails to sufficiently allege that he has suffered an injury-in-fact.

Moreover, even if Plaintiff had suffered an injury-in-fact, he would still lack standing because he cannot show that his injury would likely be redressed by a favorable decision. As noted above, Plaintiff's arguments center on "Act 13's offer of information," something Plaintiff claims to be a "key piece of information" for his practice. (Doc. 58, 23.) However, if a court were to declare the Medical Gag Rules unconstitutional and enjoin Defendants from enforcing them, as Plaintiff requests, he would still lack the information he seeks. Therefore, Plaintiff also continues to lack standing to bring this action because his alleged injury is not redressible by a favorable decision. Because Plaintiff lacks standing, the Court will refrain from addressing the parties arguments as to the substantive merits of Plaintiff's claims.

**CONCLUSION**

For the reasons stated above and stated earlier by the Court in *Rodriguez v. Krancer*,

---

[2] Plaintiff's allegation that "[e]xpert testimony at trial will establish that the Medical Gag Rules interfere, on a daily and ongoing basis with [his] ability to properly diagnose and treat his patients" (*Am. Compl.* § 55) is devoid of factual support to substantiate Plaintiff's claim that the Medical Gag Rules interfere with his ability to practice medicine.

[3] Notably, the Amicus Brief field by Haliburton Energy Services, Inc. discusses the extensive amount of information regarding hydraulic fracturing fluids that is readily available to the public through various channels. (Doc. 52-4, 12-13.)

– F.Supp.2d –, No. 12-cv-1458, 2013 WL 5744866 (M.D. Pa. Oct. 23, 2013), Docs. 37 and 38, Plaintiff lacks standing to bring this action. Defendants' Motions to Dismiss will be granted, and Plaintiff's Amended Complaint will be dismissed without prejudice.

An appropriate order follows.

| | |
|---|---|
| June 30, 2014 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |